Argued February 2, decided February 20, 1912.

## CLARK *v.* CITY OF SALEM.

### [121 Pac. 416.]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—PROPERTY LIABLE
ADJACENT PROPERTY.

1. Salem City Charter (Laws 1899, p. 939) § 43, provides that each lot within the limits of a proposed street improvement shall be liable for the cost of the improvement upon the half of the street in front of and abutting it, and that, where land is not laid off in blocks, the cost of the improvement shall be assessed to the owner or owners of land lying within 100 feet of the improvement. Section 25 provides that improvements shall be made at the expense of owners of adjacent property. *Held,* that property in the city is liable to be subjected to an assessment for the improvement of a street, though it does not abut thereon, if it is adjacent.

MUNICIPAL CORPORATIONS—IMPROVEMENTS—PROPERTY LIABLE—OWNER-
SHIP—SUBSEQUENT DEDICATION.

2. Though at the time of the initiation of proceedings for the improvement of a street a half of the land sought to be used therefor was the property of a public service company, an abutting owner cannot complain that the city was without jurisdiction to make the improvement, and that the assessment was void, where the corporation owning the land subsequently made a dedication in writing to the city.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—SETTING ASIDE
ASSESSMENT—BURDEN OF PROOF.

3. While, under Section 799, subd. 15, L. O. L., which provides that it will be presumed that official duty has been regularly performed, it may not be necessary to allege the performance of such duty, the presumption is not conclusive, and, where to a suit by a property owner to quiet her title against an assessment for an improvement the answer set up the lien of the city upon the property entered upon the lien docket and such allegation was denied by the reply, the existence of the lien became an issue of fact, the burden of proving which was cast upon the city.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIENS—NECESSITY
OF DOCKETING.

4. The purpose of entering the lien of a city for street improvements in the lien docket in only to establish the priority of claims to the property and to operate as notice to creditors, purchasers, and incumbrancers, and the right to recover the assessment does not therefore depend upon the making of the entry at a particular time.

EXECUTION—LIEN—ENTRY OF JUDGMENT ON LIEN DOCKET.

5. The levy of an execution creates a lien, though the judgment is not entered on the lien docket.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—LIEN—CREATION—
ISSUE OF WARRANT.

6. Under Salem City Charter (Laws 1899, p. 938) § 38, which provides that a warrant for the collection of an assessment for improve-

ments shall have the force and effect of an execution against real property, an assessment which is regular and valid may be enforced against property by the issue of the warrant, though not entered upon the lien docket.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is a suit by Nancy Clark against the city of Salem. The facts as disclosed at the trial are as follows: In the year 1910 the city of Salem improved a portion of Fourteenth street, including that part thereof lying between Chemeketa and Center streets, by laying concrete pavement 30 feet wide. Plaintiff is the owner of the ground lying east of the proposed improvement between the two streets above named. The premises are described as follows:

"Beginning at a point where the south line of Center street intersects the east line of Fourteenth street in the city of Salem, in Marion County, Oregon, and running thence southerly along the east line of Fourteenth street 370.33 feet to the north line of Chemeketa street; thence easterly along the north line of Chemeketa street 100 feet; thence northerly parallel with Fourteenth street 370.33 feet; thence westerly 100 feet to the place of beginning."

And as part of the same tract plaintiff on November 15, 1892, also owned the land now constituting the east half of Fourteenth street between Chemeketa and Center; that such property has not been platted or laid off into blocks and streets. On November 15, 1892, plaintiff conveyed by a warranty deed to the Capital City Street Railway Company the strip of ground 30 feet wide between Chemeketa and Center streets, now constituting the east half of Fourteenth street. It constructed its street railway over and caross the same on such ground has remained uninclosed. On March 28, 1910, the city council having decided to pave Fourteenth street, adopted plans and specifications therefor, and on May

2, 1910, by ordinance, assessed the expense of the improvement upon the adjacent property, and, among others, assessed upon plaintiff's property, above described, the sum of $1,174.90. On May 14, 1910, the council let the contract for the paving to August Kehrberger. On May 9th negotiations were commenced, and on July 19th they were consummated, whereby the city secured from the Portland Railway Light & Power Company, the successor to the Capital City Street Railway Company, the release and dedication in writing to the city of the east half of Fourteenth street between Chemeketa and Center streets for street purposes, subject to the right of the railway company to maintain its track, wires, and poles thereon for the operation of its road. On June 29, 1910, plaintiff served a notice upon the mayor and council of the city, objecting and protesting against the improvement of any portion of Fourteenth street, the cost of which is to be charged to her property, for the reason that the east half of the street between Chemeketa and Center is the private property of the street railway company, and that her property does not abut upon the street, and for that reason her property is not liable for the expense of the paving. At the time this notice was served the contractor had constructed or commenced the construction of the curbing thereon, but had done no other work in front of plaintiff's property. On the 7th of October, 1910, plaintiff commenced this suit against the city to quiet her title to the property. Defendant answered, alleging the proceedings leading up to and terminating in the paving, and the creation of the lien upon plaintiff's property for a portion of the expense thereof, as a complete defense. The reply alleged the facts as to the want of title in the city to the east half of the street, and the notice given to the defendant. Decree was rendered

in favor of plaintiff, enjoining defendant from assert-
ing a lien upon the property and defendant appeals.

REVERSED.

For appellant there was a brief over the name of
*Mr. Grant Corby,* with oral arguments by *Mr. Corby* and
*Mr. Rollin K. Page.*

For respondent there was a brief and oral arguments
by *Mr. Geo. G. Bingham* and *Mr. John A. Carson.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. It is first contended by plaintiff that, as her prop-
erty did not abut upon the street as it existed at the
time of the notice of intention to improve it was given,
her property was not liable, relying upon the language
of section 43 of the charter (Laws 1899, p. 939), which
provides that "each lot or part thereof within the limits
of a proposed street improvement shall be liable for the
full cost of making the same upon the half of the street
in front of and abutting upon it."   However, section 25
of the charter provides that "the said improvements of
streets * * herein provided for shall be done at the
expense of the owners of adjacent property."   The term
"adjacent" includes property in the neighborhood of the
improvement though not actually touching thereon.
25 Am. & Eng. Enc. Law, (2 ed.) 1191.   Section 43
also makes a provision for such a case as this, where
plaintiff's property is not laid off in blocks, in which
case "the cost of the improvement shall be assessed
to the owner or owners of the tract of land lying within
one hundred feet of such improvement."

2. Plaintiff's main contention is that the east half of
what is now Fourteenth street between Chemeketa and
Center streets at the time of the initiation of the pro-
ceedings to improve Fourteenth street was a private
property of the Portland Railway Light & Power Com-

pany, and upon which a part of the improvement was to be laid; therefore, the city was without jurisdiction to make the improvement, and without authority to assess the expense thereof upon the adjacent property, and that a subsequent dedication of the street cannot validate the proceedings so as to make the lien enforceable, relying upon the authority of *Spaulding* v. *Wesson,* 115 Cal. 441 (47 Pac. 249), which supports plaintiff's contention. But the better rule seems to be that, although the city has no jurisdiction to place its improvement upon the private property and hold the property owners liable for the expense thereof, yet, if before the proceeding is completed the city condemns or secures the dedication of the street, the property owners cannot complain. 2 Elliott, Roads & Streets (3 ed.) § 681. The same author, in discussing this question, at section 605, casts doubt upon the soundness of the holding in *Spaulding* v. *Wesson,* 115 Cal. 441 (47 Pac. 249), saying that it is an extreme case:

"It has been held that a contract for the improvement of a street is not *ultra vires* and void simply because condemnation proceedings have not been fully consummated before the passage of the order for the improvement."

And in *Keough* v. *City of St. Paul,* 66 Minn. 114, 118 (68 N. W. 843), it is held that the fact that the condemnation or dedication of the street has not been completed cannot be urged against the assessment after these things are completed. In *Holmes* v. *Village of Hyde Park,* 121 Ill. 128 (13 N. E. 540), it is held that an assessment for a proposed street improvement made prior to the acquiring of the right to the street by condemnation or otherwise is not void, but may be enforced after the dedication of the street. To the same effect is *People* v. *Common Council of Rochester,* 5 Lans. (N. Y.) 142, 146. In *Village of Hyde Park* v. *Borden,* 94

Ill. 26, it is held that the collection of a special assessment for the construction of a sewer cannot be resisted because at the time of the adoption of the ordinance for the proposed improvement and of the making of the assessment permission was not obtained to make the improvement through the lands of another. The permission may be obtained afterwards, and it will be good. To the same effect is *City of St. Joseph, etc.* v. *Landis*, 54 Mo. App. 316. In *Edwards* v. *Cooper*, 168 Ind. 54, 67 (79 N. E. 1047), it is held that the mere fact that the resolution for the improvement was adopted before the street was opened was but a mere irregularity of which the property owner cannot complain, if regularly opened before the final hearing. See, also *City of Toledo, etc.* v. *Barnes, 2 Ohio S. & C. P.,* Dec. 590; 2 Elliott, R. & Sts. (3 ed.) § 681; 28 Cyc. 1108.

Therefore we conclude that the assessment was not void and is enforceable after the completion of the opening of the street, and, that being true, plaintiff cannot complain that her property does not abut upon the improvement, as it does touch upon it as dedicated and improved.

3. Plaintiff further contends that the defendant has offered no evidence to establish the existence of the lien upon the property. The answer alleges that the assessment was entered in the lien docket of the city, and ever since has been and is a lien against the property. This is denied by the reply. No evidence was offered upon that issue, but defendant relies here upon the presumption "that official duty has been regularly performed." Section 799, subd. 15, L. O. L. By this statute it may be unnecessary to allege a fact, the existence of which the law will presume. However, that presumption is not conclusive. In this case the lien is alleged, and, being denied it became an issue of fact, the burden of proving which was thereby cast

upon defendant. It was so held in *School Dist. No. 2 v. Lambert,* 28 Or. 209, 220 (42 Pac. 221). See, also, *National Bank* v. *Herold,* 74 Cal. 603 (16 Pac. 507: 5 Am. St. Rep. 476). Therefore that presumption cannot aid defendant.

4. However, the purpose of the lien is to establish the order of the priority of claims to the property and to operate as notice to other creditors as well as purchasers and incumbrancers, but the assessment is not lost or barred or rendered void because not entered on the lien docket at any particular time.

5. A judgment is vaild, and the lien will be created by the levy of the execution even though the judgment is not entered on the lien docket. 17 Cyc. 1060; 23 Cyc. 1351; *Smith* v. *Farmers' & Merchants' Nat. Bank,* 57 Or. 82 (110 Pac. 410); *Wood* v. *Fisk,* 45 Or. 276, 278 (77 Pac. 128, 738); *Budd* v. *Gallier,* 50 Or. 42 (89 Pac. 638); *Rice* v. *Warren,* 91 Ga. 759 (17 S. E. 1032); *Hastings* v. *Cunningham,* 39 Cal. 137.

6. The warrant for the collection of a street assessment by the terms of section 38 of the charter shall have the force and effect of an execution against real property and shall be executed in like manner, except as in the charter specially provided, and therefore it may be enforced even though the assessment is not entered on the lien docket. The assessment having been found to be regular and valid, plaintiff is not entitled to have it canceled or decreed void, even though it has not been entered on the lien docket.

The decree will be reversed, and the suit dismissed.

REVERSED.

Mr. Justice BURNETT took no part in this decision.