# CHARLESTON.

## WERNINGER v. CITY OF HUNTINGTON.

Submitted March 28, 1916.   Decided April 4, 1916.

1. MUNICIPAL CORPORATIONS—*Improvements—Assessments—Enforcement.*

    To a bill to enforce the lien of municipal sewer assessments against the property benefitted by the improvement, one holding a lien on the land, by virtue of a will, for the payment of a legacy charged thereon, is a necessary party; and his omission as such renders the bill bad on demurrer. (p. 109).

2. SAME.

    Where a city, erroneously but in good faith assuming an alley to be a public one, constructs therein a sewer, without first acquiring title to the soil or the necessary easement therein, such unlawful entry and appropriation, in the absence of protest or objection by the landowners with knowledge thereof, do not alone constitute a defense to a suit for the enforcement of the special

assessments lien, if the city has power under its organic law subsequently to acquire the easement by condemnation. (p. 111).

3. SAME.
    Nor can such defense be asserted where the landowners, with full knowledge of the encroachment, failed to object or protest against it, but granted permission therefor. Such acquiescence and permission constitute an estoppel to contest the right to enforce payment of the assessments. (p. 113).

Appeal from Circuit Court, Cabell County.

Bill by A. W. Werninger against the City of Huntington and others. From the decree, plaintiff appeals.

*Reversed and remanded.*

*F. M. Livezey,* for appellant.

*Geo. S. Wallace* and *Harry S. Irons,* for appellees.

LYNCH, JUDGE:

By will duly probated, Mary J. Johnston devised four acres of land owned by her in the city of Huntington to her husband for life, and thence to James E. Johnston, trustee for his children then or subsequently to be born, subject to the payment of certain legacies, among them being one to Kyle Johnston Kinkead, then an infant, when he shall attain his majority.

The land lies within the area bounded by First and Third streets and Sixth and Seventh avenues, Second Street dividing it into two parcels. Opened and dedicated to public use, as alleged, is an alley between and parallel with the two avenues, extending from First to Third streets and it may be beyond both of them, except through the lot devised. Whether that part of the alley is enclosed or open is not clearly shown, but it does appear from the bill that, if open at all, it is not a public but private easement used exclusively for the benefit and enjoyment of the lot owners.

As the assignee and holder of certificates of assessment purporting to have been made by the municipality for public improvements, and by it delivered to F. L. Gillespie, the contractor and assignor, for work performed by him in the construc-

tion of a lateral sewer in the alley from First to Third Street, including that part thereof within the confines of the four acre lot, under a contract with the city, plaintiff brought this suit to obtain a decree fixing and declaring the several assessments, aggregating $927.30, to constitute liens on designated portions of the four acres, and directing a sale thereof and application of the proceeds to the satisfaction of the liens so declared. To this end, he named in the caption of the bill James E. Johnston in his own right and as trustee, Archie L. Johnston, Fred W. Johnston and his wife Lillian, Mildred V. Johnston and Kyle J. Johnston as adults, Edmond V. Johnston as an infant, and the city of Huntington, parties defendant thereto. To the bill all the defendants so named, except the city of Huntington, jointly demurred. The city filed a .separate demurrer, on which the court did not rule. The joint demurrer was sustained, and, plaintiff electing to stand on his averments and declining to amend, the bill was dismissed as to the joint demurrants.

The bill accounts for the personal interest of James E. Johnston by averring that, in the absence of trust funds, he secured loans in an amount sufficient to discharge the specific bequests by the will made charges against the land, except the one payable to Kyle Johnston Kinkead, who was not named in the writ, the caption or prayer of the bill, nor in any manner served with process; and he did not, nor did any one for him, appear thereto for any purpose. Presumably by inadvertence, plaintiff named as defendant in his stead Kyle J. Johnston. If so, the complainant must suffer the consequences of the inadvertence, unless the misnomer or omission be corrected in compliance with an order of the court under sec. 58, ch. 125, Code.

That the relief prayed by plaintiff, if granted, would necessarily tend to put in jeopardy the interest of Kyle Johnston Kinkead, his unpaid legacy being a lien against the land, and hence made necessary his presence as a party, seems too obvious for argument or citation of authority, although by the charter of the municipality special assessments for improvements made on the lot under its corporate authority constitute liens thereon first in point of priority except as to taxes

and on an equality with them. Any decree rendered in the cause prejudicial to his rights under the will, without his presence as a party duly summoned, could not, if challenged for error, be allowed to stand; it would not bind him. *Chartiers Oil Co.* v. *Moore,* 56 W. Va. 540; *Reger* v. *Gall,* 54 W. Va. 373; *Ralphsnyder* v. *Titus,* 63 W. Va. 469. Where, in equity, any person not a party has a subsisting interest in the subject matter of the suit, he should be brought in by amended bill and proper process before final decree. *Rexroad* v. *Raines,* 63 W. Va. 511. The testatrix evidently meant to secure payment of the bounty provided for the benefit of the legatees. In effect, she declared it to be a preferential charge on the lands devised. The devisees of the fee took it subject to the legacies.

Nor does the reasoning on which is based the rule laid down in some of our decisions, permitting enforcement of a vendor's lien by a sale of the real estate subject thereto without the presence of judgment creditors of the owner, afford sufficient justification for application of the rule to the situation here presented. Although of statutory creation, because not recognized at the common law, the preferential lien of special assessments as compensation for municipal improvements is drastic and frequently oppressive. The owner of the property presumably benefitted, and others whose rights and interests may injuriously be affected, therefore, ought to be afforded an opportunity, at every stage of the proceeding to enforce such liens, to contest the right of the municipality and others in contractual relation with it to claim and exercise the benefits conferred by law in such cases. We think it clear, therefore, that the omission of the unpaid legatee as a defendant rendered the bill demurrable for want of a necessary party. The bill also leaves uncertain the question whether others having like interests have been paid the bequests in their favor.

Were the bill otherwise defective because not alleging grounds for equitable relief, the absence of Kyle Johnston Kinkead as a party thereto necessarily would be immaterial. But, as we shall later determine, that pleading does state a cause, which, if proved, will warrant a decree favorable to

plaintiff.   Hence, the question may arise whether, after declining the opportunity to amend, the defect as to parties may now be cured.   It is only necessary to cite *Van Winkle* v. *Blackford,* 33 W. Va. 573, 588, where, in a similar situation, it was held that, the ruling on the demurrer and dismissal of the bill being erroneous, plaintiff should again have an opportunity to bring in the absent party.

But the important and in this state the novel question presented for consideration and decision, and arising upon the demurrer sustained, relates to the right of a municipality to lay a lateral sewer in a private alley as part of its general sewerage system, without first having acquired the right so to do by condemnation or otherwise under its corporate franchise, and thereby to obtain and enforce a lien on the alley and property abutting on it for the assessed value of such improvements, unless the work be done with the assent of the owner.

That the city of Huntington had ample authority to acquire by condemnation rights of way for streets and alleys, and thereon to lay a system of sewerage for public use, and by proper assessments to acquire enforcible liens on abutting properties, seems to be conceded, at least not denied or questioned.   That authority apparently was conferred by the organic law of the city.   If so, and the alley was necessary for any public use thereby authorized, the city could and ought to have condemned it before entering thereon to lay the sewer line.   Doubtless, it would have pursued that course had it not assumed, although erroneously, that the alley was public because open and unenclosed, as perhaps it was.   This assumption was excusable, if it be true, as alleged in the bill, and because so alleged we must accept it as true on demurrer, that the defendant owners and encumbrancers permitted the municipality through its contractor to enter upon and improve the property.   Besides, if indeed the alley opened through the tract was private and not public, as readily we may infer the averments of the bill show, it was the prividege and it may be the duty of the owners to protest against the apropriation of their property to a public use by the municipality, if it was done under their observation.

But, conceding that the entry was unlawful and unauthorized, and therefore a trespass, this *concessum* does not necessarily preclude enforcement of the statutory lien against the property made subject thereto by the municipal franchise. The corporation may yet do what it ought to have done in the first instance. By the exercise of the right of eminent domain, it could have acquired, and may yet acquire, an easement in the alley for any necessary public purpose within the scope of the power conferred by its charter, notwithstanding a prior unlawful entry thereon for that purpose. 5 McQuillin on Mun. Corp. section 2114 and cases cited; 1 Page on Taxation by Assessment, section 400; Hamilton on Special Assessments, section 546; 4 Dillon on Mun. Corp. section 1458 and cases cited. These authorities also affirm the proposition that, if thereby the corporation may afterward acquire the necessary easement, it may also by special assessment charge the property with the benefits derived from the expenditures made before such acquirement. If after such appropriation it can re-assess and re-charge the property with the costs and expenses of the improvements, what reason exists for permitting defendants to delay enforcement of the lien until the determination of the condemnatory procedure. They can obtain compensation for the trespass either by an action to recover damages, or by an assessment by a commission appointed in a proceeding to condemn. The enforced payment of the assessed benefit does not forestall the exercise of either remedy. They may pay the assessments and then sue for damages caused by the invasion of their proprietary rights in the property. Or if they desired to prevent its appropriation to a public use before the payment of damages or security therefor under the constitutional protection, their remedy was to enjoin; but failure to resort to that remedy does not preclude the right to avail themselves of an action for the trespass. The right to recover damages is an independent right, in nowise foreclosed by the assessment. But, pending either remedy, defendants can not prevent the operation of the sewer nor compel its removal from their land. *Railroad Co.* v. *Railroad Co.,* 70 W. Va. 226; *Dulin* v. *Railroad Co.,* 73 W. Va. 166. And, although the laying of a public sewer on private proper-

ty constitutes a trespass, that fact alone will not exonerate the owner from the payment of the special assessments for the benefits received therefrom. *Holmes* v. *Hyde Park,* 121 Ill. 128; *Hunerberg* v. *Hyde Park,* 130 Ill. 156; *Railroad Co.* v. *Mayor,* 80 Atl. (N. J. L.) 228; *State* v. *New Jersey City,* 29 N. J. L. 441, 452; *Johnson* v. *Duer,* 115 Mo. 379. See also *Keough* v. *St. Paul,* 66 Minn. 116; *Lewis* v. *Albertson,* 23 Ind. App. 150; *Hochfeld* v. *Portland,* 142 Pac. 824; *Clark* v. *Salem,* 61 Ore. 116; 32 Ann. Cas. 205.

Furthermore, where the owner of the property, who had at the time full knowledge of the construction of the sewer, did not object or take any steps to prevent it, or granted permission, as the bill charges defendants did, he will not be allowed to accept the benefits without rendering compensation for the improvements. *Boynton* v. *People,* 159 Ill. 553; 5 McQuillin on Mun. Corp. section 2120; 4 Dillon on Mun. Corp. section 1455. His acquiescence creates an estoppal to contest the enforcement of the assessments.

As the reasons given lead to the conclusion that the decree appealed from is erroneous, we reverse it, overrule the demurrer in so far as it affects the vital merits of the case, and remand the cause, with leave to amend or correct the bill by adding as defendant the party erroneously omitted.

*Reversed and remanded.*