### ARTHUR C. THOMSON
#### *v.*
### THE PEOPLE *ex rel.* Foote, County Collector.

*Opinion filed February 19, 1900.*

1. SPECIAL ASSESSMENTS—*what not a repeal of the assessment ordinance.* An ordinance for paving and curbing the middle portion of a street and for grading the space on each side of the pavement is not repealed by a subsequent ordinance authorizing a street railway company to lay its tracks on one side of the street, over the graded portion but outside the curb line fixed by the prior ordinance, even though the later ordinance requires the company, at its own expense, to pave the part of street occupied by its tracks.

2. SAME—*in absence of fraud, assessment against particular lot may be reduced by agreement.* A reduction of an assessment against particular property by agreement between the city and the owner upon the latter's withdrawing his objections to the confirmation, does not, in the absence of fraud, invalidate the judgment against other lots.

3. SAME—*when objection that lot owned in severalty was assessed in gross comes too late.* An objection that a lot owned in severalty by two persons was specially assessed to one person in its entirety should be made at confirmation and comes too late on application for judgment of sale, where the objector had due notice of the application to confirm and his agent examined the assessment roll before confirmation.

APPEAL from the County Court of Lake county; the Hon. D. L. JONES, Judge, presiding.

BOWEN W. SCHUMACHER, for appellant.

184—2

Samuel F. Knox, and C. T. Heydecker, (Smoot & Eyer, of counsel,) for appellee.

Mr. Justice Craig delivered the opinion of the court:

This is an appeal from the judgment of the county court of Lake county, rendered against lot 1, block 23, of the original subdivision of the city of Highland Park, on the application of the county collector, for a delinquent special assessment for paving and improving St. John's avenue from Central avenue to Laurel avenue, in the city of Highland Park. The application of the county collector for judgment for delinquent taxes and special assessments for the year 1898 showed that lot 1, block 23, was assessed in the name of A. C. Thomson, and that there was due on first and second installments of a special assessment for paving St. John's avenue, including interest and costs, $537.78, for which the collector asked judgment. The appellant appeared and filed various objections, which were all overruled and judgment entered against the property for the amount shown to be due. To reverse the judgment appellant has appealed.

It is first claimed in the argument that the ordinance under which the improvement was made was repealed before the judgment of confirmation. The ordinance providing for the improvement, as set out in appellant's abstract, provides that St. John's avenue from Central avenue to Laurel avenue be paved and improved; that said avenue shall be graded for a space of twenty feet on each side of the center line of said avenue; that a trench shall be dug on each side of the finished pavement twenty-one feet from the center line thereof; that a drain tile shall be laid in said trench; that said roadway shall be excavated and rolled and spread four inches deep with lake shore sand, and on this shall be placed a layer of limestone to the depth of four inches; on this shall be placed a layer of Joliet gravel, which shall be rolled; on this shall be placed a layer of lake shore sand; on this

shall be placed a layer of brick; that catch-basins shall be constructed; that the portion of the street ordered to be paved shall be finished on each side twenty feet from the center line of St. John's avenue with stone curbing; that that part of said avenue which lies on either side of the finished roadway, here called parkways, shall be graded to such a grade as to allow a gradual slope from the lot lines down to the top of the curb of said finished roadway.

This ordinance was passed on the 25th day of February, 1896, and in pursuance of the ordinance the assessment was made and a judgment of confirmation rendered on the 26th day of February, 1898. In the meantime, however, on the 25th day of January, 1897, the common council of the city of Highland Park granted to the Bluff City Electric Railway Company a franchise to run a street railway through the city. Section 1 of the ordinance provided: "That right and permission is given to said Bluff City Electric Street Railway Company to locate, construct and maintain a single or double track street railway, with the necessary side-tracks, etc., over the following mentioned streets." Among other streets is mentioned the following: "On the west side of St. John's avenue from Vine avenue to the south side of Lincoln avenue, etc., provided that from the south line of Elm place to the south line of Highland avenue a double track shall be laid, both tracks to be so located that they shall occupy not to exceed fifteen feet in width from the outside rail of the east track to the outside rail of the west track, the outside rail of the west track to be within seven feet of the west line of St. John's avenue, giving said company permission to make the necessary curves and cross all bridges."

Under this ordinance the street railway company constructed a double track on St. John's avenue between Laurel and Central avenues, but no part of the street railway was laid upon the paved or improved part of the

street.   St. John's avenue is eighty feet wide, so that
there was ample room for the street railway to construct
its double track along the west side of the street outside
of the improved portion.   Upon an examination of the
plat of the street found in the record it will be seen that
the street railway company, in constructing its track,
laid its west rail three feet and seven inches from the
west line of St. John's avenue, so that the entire right of
way as located by the street car company was west of
the paved and improved part of the avenue.   As has been
seen, by the ordinance providing for the improvement
twenty feet on each side of the center line of the street
was ordered paved, thus making a paved roadway forty
feet wide in the center of the street.   The roadway thus
provided for was to be curbed with a stone curb, and be-
yond the roadway the unpaved part of the street was to
be merely graded from the line of the lots to the curb
line.   We do not, therefore, regard the ordinance giving
the street railway company the right to occupy the street
as a repeal or modification of the ordinance providing for
the improvement.   That part of the street occupied by
the street railroad was graded as required by the ordi-
nance, and after being so graded the tracks were laid
down.   It is true, the street car company was required
to pave that part of the street occupied by its tracks;
but this fact had no bearing on the improvement pro-
vided by the ordinance as originally passed.   If the city
saw proper to require the street car company to pave
fifteen feet of the street which was not required to be
paved by the ordinance, this cost appellant nothing.
He was in no manner injured and has no just ground of
complaint.

It is, however, said that the parkway, so called, where
the street car company laid its tracks, was by the speci-
fications required to be seeded.   In the contract made by
the city with the contractor the specifications did provide
for seeding the street from the lot line to the curb line,

but the ordinance providing for the improvement contains no provision for seeding and no seeding was done.

*St. John* v. *City of East St. Louis*, 136 Ill. 207, has been cited by appellant as an authority sustaining his position. There is no similarity between the case cited and this case. There a material part of the improvement as required by the original ordinance was abandoned, and it was properly held that a special assessment for the whole cost of the work could not be collected. But no such case has been made out here. On the contrary, the improvement was made in the manner required by the ordinance.

It appears from the record that the Chicago and Northwestern Railway Company owned property on the street where the improvement was made, and the property was assessed $2743.68. The railway company filed objections to the assessment, and on the 26th day of February, 1898, the following order was entered: "This day comes the city of Highland Park, by K. R. Smoot, its attorney, and the Chicago and Northwestern Railway Company, objector, by Whitney & Upton, its attorneys; and this cause coming on to be heard upon the objections of the Chicago and Northwestern Railway Company as to the benefits, and said objector having withdrawn all its objections to said assessment which are not triable by jury, and the objections triable by jury having been by agreement of counsel in open court submitted to the court, a jury having been waived, and the court, having heard the evidence and the arguments, finds that the property of the Northwestern Railway Company, objector, is assessed more than it is benefited by said proposed improvement and more than its proportionate share of the costs of said improvement, and that the property of said objector is specially benefited by said improvement to the amount of $1800, and no more. It is therefore ordered that said assessment as to said property of said railway be modified and reduced to the amount of $1800, and that the

same be confirmed for said amount." After this order was put in evidence, appellant called as a witness Mr. Smoot, the attorney for the city of Highland Park when judgment of confirmation was entered against it, and asked the following question: "Was there any testimony introduced before the court at that time with reference to the benefits accruing to the Chicago and Northwestern Railway Company?" Upon objection being made, the court ruled that the evidence was not admissible. Appellant then asked the following question: "Is it not a matter of fact, Mr. Smoot, that this order overruling the objections of the Chicago and Northwestern Railway Company and confirming this assessment was entered by stipulation of the parties without any hearing before the court?" This was also excluded and appellant excepted.

Conceding it to be true that no evidence was introduced, as claimed, and that the order reducing the assessment was made by agreement, these facts could not be relied upon to defeat the assessment against appellant's property. If the assessment of the railway company was too large and the city became satisfied of that fact, no reason is perceived why the amount might not be reduced by agreement of the parties. At all events, if the witness had testified that the assessment of the railway company was reduced by agreement, as appellant sought to prove, it would not follow that the judgment confirming the assessment against the railway company was fraudulent. The court did not, therefore, err in its ruling on the evidence.

It appears from the record that lot 1, block 23, in the city of Highland Park, is two hundred feet wide and two hundred feet deep. It also appears that the appellant, Thomson, owns the west one hundred and twenty-five feet of the lot but the east seventy-five feet belongs to another person. The commissioners appointed to estimate the cost of the improvement and assess the benefits on the property adjoining the improvement found that

lot 1, block 23, was benefited in the sum of $1300, and this sum was assessed on the whole lot, disregarding the fact that one hundred and twenty-five feet of the lot was owned by one person and seventy-five feet by another, and it is claimed that a judgment for a delinquent assessment cannot be entered against a lot, on application of the county collector, which is owned in severalty by different persons. In making the assessment it was the duty of the commissioners, where a tract of land was owned in severalty, as it was here, to assess each tract separately, so that each owner may pay the assessment on the land which he owns without being encumbered with an assessment which should be paid by another. But while the commissioners committed an error, the appellant cannot take advantage of that error on application for judgment by the county collector. It is not disputed that appellant was duly notified of the assessment and that his agent examined the assessment roll before the assessment was confirmed. It was therefore his duty to appear in the county court on the application to confirm the assessment and call the attention of the court to the error so that it could be corrected. This he failed to do, and the judgment of confirmation is conclusive upon him. Where the court had jurisdiction, as it had here, its judgment will be conclusive, although errors not affecting the jurisdiction may have occurred. *Steenberg* v. *People ex rel.* 164 Ill. 478.

Appellant has cited as authority *Howe* v. *People*, 86 Ill. 288. That was an application for judgment for the sale of lands for general taxes, where the owner of the property had no opportunity, before the application for judgment, to appear in court and question the validity of the assessment, and hence the decision in that case can have no application to a case like the one in question.

The judgment of the county court will be affirmed.

*Judgment affirmed.*