Argued March 17, writ denied March 24, 1925.

## CHAUNCEY FLOREY v. J. B. COLEMAN.

(234 Pac. 286.)

**Mandamus—Will Issue to Compel Officer to Perform Duty—Legal Right must be Plain.**

1. Under Section 613, Or. L., *mandamus* will issue to compel performance of an act which the law expressly enjoins as duty of an officer, but legal right to performance of particular act sought to be compelled must be plain and complete.

**Taxation—County Assessor Presumed to have Followed Statute in Delivery of Assessment Roll.**

2. Where record is silent as to disposition made of assessment roll, assessor will be presumed to have followed Section 4308, Or. L., by delivery to tax collector, so as to render assessment roll a tax roll.

**Taxation—"Board of Equalization" may Direct Reduction of Assessed Values, and Assessor Should Extend Reduction on Roll.**

3. Under Sections 4291–4297, 4303, 4308, Or. L., county board of equalization or any two of its members had power to direct reduction of assessed values, and assessor having notice thereof should have extended the reduction on the assessment roll; "board of equalization" being board designed to equalize valuation of property for the purpose of assessment and taxation.

**Taxation—Delivery of Assessment Roll to County Clerk not Authorized.**

4. Delivery of assessment roll to county clerk, as clerk of board of equalization, in order that he may make changes ordered by the board, *held* not directed or authorized under Sections 4291–4297, 4303, 4308, Or. L., and therefore *mandamus* to compel delivery will be denied.

---

1. See 18 R. C. L. 119.
2. See 22 R. C. L. 472.

Original proceeding in *mandamus.*

In Banc.

On November 3, 1924, Chauncey Florey, County
Clerk of Jackson County, Oregon, filed in this court
a petition for a writ of *mandamus,* commanding the
defendant, J. B. Coleman, as County Assessor for
Jackson County, to deliver to him as such county
clerk, "and as clerk of the board of equalization
for said county, the tax rolls of said county for the
year 1924 for the purpose of making the corrections,
additions to, and changes in said rolls required
by" the orders of the board of equalization, which
were made a part of the petition. On that day an
alternative writ of *mandamus* issued out of this court,
commanding the defendant to appear herein on
November 15, 1924, for the purpose of showing cause.
On November 13, 1924, the defendant filed a demurrer
to the writ, and, on November 17th, filed his answer
thereto. F. Roy Davis was appointed referee for
the purpose of taking the testimony, a transcript of
which was filed in this court on March 10, 1925.

WRIT DENIED.

For the writ, *Mr. Porter J. Neff.*

*Contra, Mr. George M. Roberts.*

BROWN, J.—1. The purpose of the writ of *man-
damus* is to enforce the performance of a lawful
duty; but the legal right of a plaintiff to the perform-
ance of the particular act of which performance is
sought to be compelled must be plain and complete: 26
Cyc. 151. The writ of *mandamus* may be issued to
any officer to compel the performance of an act
which the law specially enjoins as a duty result-

ing from an office: Section 613, Or. L.; *Morrow County* v. *Hendryx,* 14 Or. 397 (12 Pac. 806).

Does the law empower us to require the assessor to deliver the assessment roll to the clerk of Jackson County?

Section 4291, Or. L., requires the assessor to give notice of the meetings of the board of equalization. This notice provides that the board shall meet on the second Monday in September, for the purpose of publicly examining the assessment rolls in order to correct errors in valuation, description, etc.

. Section 4292 provides:

"The county judge, county clerk and assessor of the several counties of this state shall constitute a board of equalization, * * to increase or reduce the valuation of the property therein assessed * * . The board shall meet at the court house * * each year, and the county assessor shall lay before the board the assessment rolls prepared by him. The county judge shall, if present, be chairman of such board, and the county clerk shall, if present, be clerk thereof. Two members of such board shall constitute a quorum thereof."

Section 4293 prescribes an oath for the several members of the board, to the effect that they will equalize, at full cash value, the assessment roll and the property returned thereon by the assessor. Section 4294 provides that the board shall make corrections and additions to the tax roll. Section 4295 provides for a petition and notice of increase in case of individual assessment. However, under the provisions of our Code, the board of equalization may, without notice, "increase the valuation of all property upon such rolls, in a certain proportion, in order that the valuation of the property generally upon the rolls shall be at its full cash value, as by

law required''; or, in the event that the board, in the exercise of its judgment, believes that any class of property, such as tillable land, is overvalued for the purpose of assessment, it may reduce the assessment to its actual cash value, without notice. Section 4296 provides, among other things:

"At the expiration of one month from the time the board is herein required to meet, the examination, correction, and equalization of said assessment rolls shall be deemed to be complete."

It is provided at Section 4308 that the assessor, upon receipt of a copy of the assessment of persons and property within his county from the state tax commission, shall "enter and apportion the same in the assessment roll which has been made by him and corrected and equalized by the county board of equalization and returned to said assessor." Upon the receipt of the notices provided for in Section 4303, and after the apportionment of taxes, the assessor is required to make a certificate, in duplicate, of the several amounts apportioned to be assessed upon the taxable property in his county for the several purposes. He shall deliver one copy of such certificate to the county clerk and shall attach a second copy thereof to the assessment roll containing the assessments made by him as county assessor, "as corrected and equalized by the county board of equalization." Section 4308 further provides:

"The assessor shall thereupon secure from the county clerk a warrant, in the name of the State of Oregon, under the hand of said clerk and the seal of the county clerk, authorizing the collection by the tax collector of the taxes as shown in the said certificate filed with the county clerk by the assessor. Said assessor shall thereupon attach said warrant to the said assessment roll and shall deliver said roll to

the tax collector not later than forty-five days prior to the date provided by law when a penalty or interest charge is made for the nonpayment of any tax * * . Such assessment roll shall hereafter be a tax roll.''

2. The record before us is silent as to the disposition made of the assessment roll. We assume, however, that the assessor has followed the statute and that the assessment roll has become a tax roll and is in the custody of the sheriff.

Recurring to the duties of the board:

3. Section 4297 provides that the corrections or changes in the assessment roll shall be entered in a column headed substantially: ''As equalized by the county board.'' This section further provides that ''the meeting, qualification, sittings, and adjournment of said board shall be recorded in the journal of the county court.'' This record shall be kept by the secretary of the board, i. e., the county clerk, who is the custodian of the County Court's journal. Section 4298 provides that ''such assessment rolls, when so examined, corrected and equalized by such board, shall be returned to the county assessor.''

Any member of the equalization board, during its sessions, could lawfully have made the necessary corrections and entries. In practical administration, the corrections might have been entered by clerical assistants from the office of the clerk or of the assessor; but any correction and equalization, or any change, entered at any time, by the direction of the board, shall be deemed the act of the board. In general practice, the board orders the reduction or increase, as the case may be, and directs the assessor to make the necessary entries in the assessment roll.

If two members of the board of equalization of Jackson County believed that the tillable land of

that county was overvalued for the purpose of assessment, it was lawful to reduce the assessed valuation to its actual cash value without petition and without hearing evidence: 3 Cooley on Taxation (4 ed.), §§ 1194, 1197. The board lawfully determined that a reduction in the assessed value of the tillable land should be made. The assessor had notice thereof, and he should have extended the same of record on the assessment roll.

The board of equalization is what its name indicates. It is designed to equalize the valuation of property for the purpose of assessment and taxation. The wisdom or motive involved in the act of the board is not here considered.

4. The law does not direct or authorize the delivery of the assessment roll to the clerk. The writ must be denied.                   WRIT DENIED.